FD-302 (Rev. 10-6-95)

- 1 -

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription   02/22/2012

   LETICIA F. MIFFLETON, female, date of birth ▓▓▓▓▓, ▓▓▓▓ Social Security Account Number (SSAN) ▓▓▓▓▓, Texas drivers license ▓▓▓▓▓, residence address ▓▓▓▓▓ Watagua, Texas, 76148, telephone ▓▓▓▓▓, was interviewed at the FBI's Fort Worth Resident Agency, 2601 Meacham Boulevard, Suite 500, Fort Worth, Texas, 76137. Present on behalf of MIFFLETON was her attorney, James G. Graham, Durkin Law Offices, P.C., 1315 Brookside Drive, Suite B, Hurst, Texas, 76053, telephone (817)545-9700. MIFFLETON was advised of the identity of the interviewing agent and the nature of the interview. MIFFLETON then provided the following information:

   MIFFLETON first became aware of the investment properties in San Diego, California through a very close friend of hers, SHELLY KING. ▓▓▓▓▓ owned a company in San Diego called ADVANCED PARTNERSHIP PROPERTIES (APP). KING and MIFFLETON were told ▓▓▓▓▓ that they could purchase several investment properties using only their credit score to qualify for the loans. Both MIFFLETON and KING were interested in the investment and had ▓▓▓▓▓ run their credit scores. However, only MIFFLETON had a high enough credit score to qualify.

   ▓▓▓▓▓ told MIFFLETON that after purchasing a property APP would then flip the property to a buyer that APP had already lined up. The flip would take approximately 3-6 months per property. MIFFLETON would receive a $30,000 builder's credit per property to aid in paying the mortgage and any other house related expenses during the time the property was on the market during the flip process.

   MIFFLETON decided to do the investment and was put in touch with BILL PARSONS, ▓▓▓▓▓ to begin the loan process. PARSON's was the only person MIFFLETON dealt with from that point forward. PARSONS told MIFFLETON that all she would need for the loan was her credit score and no other documents were needed.

   Shortly after the process began, PARSONS contacted MIFFLETON and asked her if she had ever been paid to clean houses or do any ▓▓▓▓▓ self-employment work. MIFFLETON said that she did occasionally. PARSONS asked if he could list "Leticia's Cleaning Services" as MIFFLETON's employment on the loan

Investigation on  02/21/2012   at  Fort Worth, Texas

File # ▓▓▓▓▓-▓▓       Date dictated _____

by  SA Jonathan R. Schmidt:jrs                 054jrs01.302

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;
it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 10-6-95)

Continuation of FD-302 of __Leticia F. Miffleton__ , On __02/21/2012__ , Page __2__

application. MIFFLETON told PARSONS that she did not have a cleaning service and did not feel comfortable putting that on the application. She also told PARSONS that she was under the impression that she didn't need to list a job and all she needed was a good credit score. MIFFLETON did not want to proceed with the loan if that was not the case. PARSONS did not mention the employment matter again and continued with the loan process.

In 2007, MIFFLETON worked part time for FedEx and made approximately $600-$700 per month. MIFFLETON did not have any other job at the time she invested with APP.

In March 2007, MIFFLETON received $36,000 from APP via wire transfer from a bank account              . MIFFLETON was told that the money was to be used for the closing costs for each of the four properties she was going to purchase.

All of MIFFLETON's biographical information was recorded correctly on the loan application for each property. However, her employment and income information was false. MIFFLETON did not notice that the loan application listed her making $8,145 per month until she received the third properties closing documents. At that time she assumed that PARSONS worked something out with the bank and it was okay for it to be listed that way. MIFFLETON did not question PARSONS about the discrepancy. The liabilities and assets were also listed correctly on the loan application.

MIFFLETON has never met, or ever heard of a CPA named Dennis Tapia. She was unaware that he wrote a letter stating that she had been self-employed. MIFFLETON had not seen the letter until it was presented to her by the writer during this interview.

MIFFLETON used each of the builder's credits she received to pay the mortgages on each house and various other bills associated with the properties. In addition, she was told she needed to send $20,000 back to      . MIFFLETON wired that money to      account.

MIFFLETON's relationship with the following individuals is as follows:

DORITA EDWARDS - Does not know her
DONALD SHORE - Does not know him

FD-302a (Rev. 10-6-95)

Continuation of FD-302 of __Leticia F. Miffleton__ , On __02/21/2012__ , Page __3__

  JAMES WARREN - Heard of him, but has never spoken to him. Unsure of what he does at APP.
  SETH WARREN - Does not know him
  MAGGIE VELASQUEZ - Does not know her

  MIFFLETON was asked to provide a written statement at the end of the interview. MIFFLETON declined due to time constraints. However, GRAHAM assured the writer that he would take her statement and forward it, along with any documentation regarding the loans that MIFFLETON still has in her possession.