FD-302 (Rev. 10-6-95)

- 1 -

# FEDERAL BUREAU OF INVESTIGATION

Date of transcription    12/22/2011

    SHARLO CHRISTINE BURRIS, date of birth ▓▓▓▓▓▓▓▓▓▓, Social Security account number (SSAN) ▓▓▓▓▓▓▓▓ residence address ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Fort Worth, Texas, cellular telephone number ▓▓▓▓▓▓▓▓▓▓▓ was interviewed at the Federal Bureau of Investigation (FBI) office in Fort Worth, Texas. After being advised of the identities of the interviewing agents, and the nature of the interview, BURRIS provided the following information:

    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ BURRIS would purchase, and flip properties using ADVANCED PARTNERSHIP PROPERTIES (APP) and BYW Construction (BYW). ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. It was BURRIS' understanding that she would acquire the properties with money provided to her by "the builder", and hold the properties a few months until other investors could purchase them. In return, BURRIS would receive a $30,000 "builders credit" for each property. The $30,000 would be hers free and clear, all without having to be out of pocket any money.

    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ BURRIS gave ▓▓▓▓ her SSAN, and permission to run a credit check.

    ▓▓▓▓▓▓ through APP began to work on the loan applications. Soon BURRIS received calls from ▓▓▓▓▓▓▓▓▓ an APP employee, asking questions about her credit report. She also recalled taking calls from MAGGIE VELASQUEZ asking about her (BURRIS) nail license. VELASQUEZ told her that sometimes the lender wants to know about professional licenses.

    There was never an incident when BURRIS was asked to provide income statements, W-2s, tax returns, or employment verification documents. The only financial document that she ever provided ▓▓▓▓▓▓ was a verification of deposit (VOD). ▓▓▓▓ wire transferred approximately $22,000 into BURRIS' Bank of America account. Subsequently, ▓▓▓▓ sent BURRIS VOD forms to take to the

---

Investigation on   12/21/2011   at   Fort Worth, Texas

File # ▓▓▓▓▓▓▓▓▓▓▓▓                                 Date dictated   n/a

by   SA Jeremy Ackerman:ja
    SA Rebecca A. Day

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;
it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 10-6-95)

Continuation of FD-302 of    SHARLO CHRISTIN BURRIS   , On 12/21/2011 , Page 2

bank and have them fill out, which she did. BURRIS then faxed a copy of the VOD documents ▓▓▓▓, and sent the original in the mail. BURRIS never reviewed any loan applications, and never interacted with a certified public accountant (CPA) or accounting firm to obtain a letter of self-employment. However, she did receive a loan signature page ▓▓▓▓. She signed the signature page and faxed it ▓▓▓▓ and also put the original in the mail.

    BURRIS moved to California in July 2007. While there, she realized the properties were not "ready" ▓▓▓▓ BURRIS, along with her husband, Jason Burris, made numerous repairs to the properties. As a result, she had to use the money she received as "builders credit" to repair the properties and for living expenses since she and her husband were not working. BURRIS received approximately $120,000 in "builder credit" payments in several installments from both BYW and APP. In instances where APP made deposits, ▓▓▓▓ explained that the builder had deposited the money into their account and APP was reimbursing BURRIS on their behalf. Ultimately, BURRIS had to spend the money on mortgage payments and other living expenses to maintain the four properties she purchased.

    BURRIS identified the following persons and described the nature of her contact with them as follows:

DORITA EDWARDS - No contact. Later identified on loan documents by her bankruptcy attorney as a broker.

FD-302a (Rev. 10-6-95)

Continuation of FD-302 of __SHARLO CHRISTIN BURRIS__, On __12/21/2011__, Page __3__

| | |
|---|---|
| DONALD SHORE - | No contact. Later identified on loan documents by her bankruptcy attorney as a broker. |
| JAMES WARREN - | The builder. |
| SETH WARREN - | JAMES WARREN's brother who was an administrator for the home owners association, owner of "Villa & Dora". Had some contact with him. |
| MAGGIE VELASQUEZ - | The loan processor for APP who called her a few times to discuss her "nail license". |
| MELISSA WATT - | Unknown job, but spoke with via telephone about home title issues. |
| APP - | Identified as STACEY JONES' company. |
| BYW - | Identified as STACEY JONES' company. |

    BURRIS provided a written statement in the form of an affidavit. The statement, along with the notes from the interview have been submitted to the 1A section of the case file.

# Affidavit

1. I, Sharlo Christine Burris, state that:
2. I reside at ▓▓▓▓▓▓▓▓▓▓ Fort Worth, Tx, 76111.
3. In 2007 I was told about a potential investment
4. dealing with the purchasing of condos to resell.
5. I spoke to ▓▓▓▓▓▓▓▓▓▓ about
6. the investment. ▓▓▓ told me there would
7. be nothing out of pocket. All you would
8. have to do is qualify with a good credit
9. score. All closing costs and down payments
10. would be made by the builder. In tern
11. the builder would give a builders credit of
12. 30,000 per unit for purchasing the properties.
13. They would not need income verification
14. because it was a no income loan based on
15. credit score. ▓▓▓▓▓ told me that I would
16. only have to keep the properties for three
17. months then they had investors that would
18. purchase them. I decided to proceed with
19. the purchase of 4 units. I understood
20. that the 30,000 was for my use but
21. the properties needed lots of work. I
22. recieved a total of 120,000 for the 4
23. properties. I had to use some of it to fix
24. the properties and for some closing cost which
25. was to be reimbursed. I also recieved

Affiant's Signature _Sharlo C Burris_    Page 1 of 2

## Affidavit

1. money for closing costs and down payment. I never
2. received a loan application to review except
3. for the signature pages which I signed and
4. faxed back. I never was asked to present income
5. or tax papers. I never sought advice from a
6. CPA or agency. In a lump sum I thought
7. the money was for my use not for the condos
8. itself. I thought it was a investment to buy and sell.
9. ___
10. ___
11. ___
12. ___

I have read the foregoing statement consisting of _2_ pages, each of which I have signed. I fully understand this statement and it is true, accurate and complete to the best of my knowledge and belief. I made the corrections shown and placed my initials opposite each.

I made this statement freely and voluntarily without any threats or rewards, or promise of reward having been made to me in return for it.

_Charles C Burke_
(Signature of affiant)

Subscribed to me before
this _21_ day of _December_
20_11_, at _4:30 pm_

_Jeremy Ackerman—SA_
(Signature and title)

_Rebecca A. Day, SA_
(Witness signature and title)

_Jeremy Ackerman—SA_
(Print name and title)

_Rebecca A. Day, SA_
(Print witness name and title)

Page _2_ of _2_