

# DEPARTMENT OF THE TREASURY
## Internal Revenue Service
## Criminal Investigation

# Memorandum of Activity

| Investigation #: |  | Location: | United States Attorney's Office |
|---|---|---|---|
| Investigation Name: |  |  | 880 Front Street |
| Date: | April 14, 2011 |  | San Diego, CA  92101 |
| Time: | ~10:33a.m.~3:30 p.m. |  |  |
| Participant(s): | Kendrick Green, Borrower |  |  |
|  | Rudolph Green, Green's father |  |  |
|  | Gloria Green, Green's mother |  |  |
|  | Christopher Alexander, Assistant United States Attorney (AUSA) |  |  |
|  | Darline M Toussaint, IRS Special Agent |  |  |
|  | Leticia Murillo, IRS Special Agent |  |  |

1. On the above date and time, AUSA Alexander, and Special Agents Murillo and Toussaint met with Kendrick Green.[1] The agents displayed their credentials and identified themselves as Special Agents with the Internal Revenue Service. AUSA Alexander explained to Green that although Green was served with a Grand Jury subpoena (Grand Jury Subpoena               to appear and provide documents; Green was not required to speak with the AUSA or the Special Agents. AUSA Alexander informed Green that speaking to the AUSA and Special Agents was completely voluntary and Green was free to leave at any time. AUSA Alexander explained to Green that a decision as to whether or not Green would testify in front of the Grand Jury would be made later.

2. The AUSA informed Green that Green was served with a subpoena as part of a Grand Jury investigation regarding properties purchased in the San Diego area, including the seven properties purchased by Green. The AUSA further informed Green that as part of the Grand Jury investigation, the agents were currently gathering evidence that would be presented to the Grand Jury at a later date. AUSA Alexander provided Green with an attorney letter and also reviewed the letter with Green. The letter states in part that Green is free to leave, that he does not have to answer any questions and that if he decides to answer questions, he could stop answering questions at any time during the questioning process.

3. The AUSA also informed Green that Green had the right to have an attorney present. Green consented to proceed without an attorney present.[2] The AUSA asked Green if

---

[1] Green was previously interviewed by Special Agents Darline Toussaint and Morgan Bailey on 3/29/2011. Green was also interviewed on 3/31/2011 when Green telephoned Special Agent Toussaint to provide additional information.

[2] Green's parents, Rudolph and Gloria Green were present during the meeting. Green stated that his parents were with him for emotional support.

Green was willing to sign a sworn affidavit regarding previous statements he made to the Special Agents, to include any additional statements he provides during today's meeting. Green agreed to sign an affidavit.

4. The Special Agents explained to Green that they would review statements that Green made in his prior interviews with Special Agents Toussaint and Bailey for accuracy. Green was informed that Special Agent Toussaint would be typing the statements on his behalf on an affidavit. Green consented to having the affidavit typed on his behalf. At the conclusion of the meeting, a copy of the affidavit was given to Green for review and editing. Green read the entire affidavit (10 pages) and informed the agents of the corrections he wanted on the affidavit. Special Agent Toussaint then corrected these items and had the affidavit re-printed again for Green to review. Special Agent Toussaint showed Green the wording of the corrections she made on his behalf and Green agreed that the affidavit was a true, accurate, and complete statement. Green then signed his sworn affidavit. Green's sworn and signed affidavit has been attached to this memorandum.

5. As part of Grand Jury Subpoena _____ which was served on Green on 03/29/11, Green provided one legal size file folder containing documents relating to his purchases of properties from _____. A memorandum listing the documents Green brought has been attached and made part of this memorandum. The agents advised Green that copies of these documents would be mailed to him at a later date.

6. At the conclusion of the interview, Green stated that he believed he had more documents associated with the property purchases with _____. The agents informed Green that he was not in full compliance of the subpoena until he checked all of his materials and provided all documents associated to the seven properties purchased in San Diego. Green told the agents that he would look for and mail any and all documents he had relating to the properties and would be in contact with the agents.

7. After meeting with Green, it was decided that Green would not testify in front of the Grand Jury.

I prepared this memorandum on 4/15/2011, after refreshing my memory from notes made during and immediately after the activity with Kendrick Green.

Memorandum Author  *[signature]*

Darline M Toussaint
Special Agent

Memorandum  Page 2 of 2

U.S. Treasury Criminal Investigation

BYW-RPRTS-000209