# Affidavit

United States of America
Southern District of California ss.

I, KENDRICK GREEN, state that:

I currently reside at 816 North Inglewood Ave., #8, Inglewood, CA 90302. I have owned 816 North Inglewood Ave., #8 since the late 1990's.

My current cell phone number is 213-819-1276. My social security number is and my date of birth is . My California drivers license number is

Special Agent Darline Toussaint and Morgan Bailey interviewed me on 3/29/2011 regarding seven properties that I purchased in San Diego during 2006 and 2007 through real estate company. I can not remember the name of the real estate company, but it was located off the 8 East Freeway in the San Diego area.

The name Advanced Partnership Properties sounds familiar to me. I spicifically remember the name Advanced because email included the word Advanced on it.

During the interview on March 29, the Special Agents showed me copies of Uniform Residential Loan Applications with my signatures for the properties located at 3532 Meade Ave. #7 San Diego, CA 92116; 3532 Meade Ave. #32 San Diego, CA 92116; 3532 Meade Ave. #41 San Diego, CA 92116; and 6824 Rolando Knolls Dr. San Diego, CA 91941. Copies of the above loan applications were also shown to me today to assist me in refreshing my memory. I indentified my signatures on the above loan applications and the loan applications appear to be the same loan applications that I signed in 2006 and 2007 when I purchased the above properties.

During the March 29 interview, the Special Agents also showed me an un-signed Residential Loan Application for the property located at 635 San Miguel Ave., Spring Valley, CA 91977. This same loan application was shown again to me today. I purchased 635 San Miguel and the loan application appears to be the same loan application that I signed when I purchased the above property.

I also purchased the properties located at 3532 Meade Ave. #40 San Diego, CA 92116 and 3532 Meade Ave. #31 San Diego, CA.

During the March 29th interview, the Special Agents also showed me various escrow and loan documents, including HUD 1 closing statements for the above properties. The escrow and loan documents were also made available for me to review today to refresh my memory for this affidavit.

During 2006 and 2007, I was an Account Executive at a company called WMC. WMC was known as Weyerhaeuser Mortgage Company, and then was taken over by General Electric.

Affiant's Signature/Initial

**Affidavit (continued)**

WMC was a wholesale originator of subprime residential mortgages. WMC is no longer in business.

My job at WMC as an Account Executive was to find clients for WMC. I was in charge of the San Diego area and as part of my job I visited various real estate offices in the San Diego area and performed sales pitches for the real estate offices to submit loan applications to WMC. WMC gave me a list of real estate offices in San Diego to visit. I would contact the real estate office and let them know that I was part of WMC and would try to get that particular real estate office to have their loans funded through WMC. was the point of contact at one of the San Diego real estate companies.

I initially told the agents during my March 29th interview that I met at the office where worked, but I now remember that I met at a company called Countywide where used to work. At some point, left Countywide and started working at a real estate company with . took my contact information with her when she left Countywide and contacted me when she started working with . appeared to be the person in charge of the real estate company where moved to after worked at Countywide. appeared to be at the company to make sure things were running right. I remember that there were several other individuals who worked at the office with , however, I do not recall all of their names. I remember one other person that worked there that looked like she was Indian, I think her name was Maggie. I think Maggie was a processor. I also remember another employee named . I believe that helped in some way at the company. When I telephoned the company, if was not there, then would assist me. There were not a lot of employees at the company, it was a really small shop. was a loan officer at the company.

informed me that her company where was working with was looking for a real estate broker to work with. I introduced a real estate broker named Dorita Edwards who is also known as Jocelyn Edwards (Edwards) to Gonzalez. Once I introduced Edwards to I "running deals" through Edwards. I met Edwards at a broker convention when I worked at WMC. Edwards told me that she really needed some business, and I told Edwards that I would keep my eyes out for any business. Edwards was not married that I knew of. I visited Edwards at her home a few times and she just had her son there, and it did not appear that she was married.

Edwards was located in the Laguna Niguel area. said they needed a second broker and that they needed to "run their deals" through another broker. I believe that the first broker was Don Shore. I have never met Don Shore.

Affiant's Signature/Initial

**Affidavit (continued)**

Sometime in 2006, told me about an investment opportunity where I could purchase properties as investments to make money.

I first purchased two residential properties from company were soliciting buyers, by telling them that they did not have to pay any money down, and that they could get immediate equity out of the properties purchased.

I agreed to purchase the properties, because I felt like I would be able to keep up with the mortgage payments with renters in each property.

During the March 29th interview, I told Special Agent Toussaint and Bailey that company paid for three months worth of mortgage payments for each property directly to the lender. I told the Special Agents that other than a few hundred dollars for minor repairs and the three months mortgage payments made to the lenders, I did not directly receive any additional money for the purchase of the seven properties. I also told the agents that one of the reasons that I agreed to purchase the properties is because told me that I would be able to refinance and make money out of the deal, however this is not true, did not tell me that. After speaking with , I agreed to make the purchases and drove down to San Diego and signed the loan documents, but I was not thinking. What I previously stated to the agents on March 29th was not correct. r company did promise three months worth of mortgage payments, however the payments were given to me directly as cashiers checks s. told me that I did not have to pay the mortgage for the first month on each property.

I also told the agents on March 29th that told me that paying the mortgage for three months was something that company did for other buyers, but this is also not true, as did not tell me this.

I did not have any construction work done on any of the properties that I purchased as part of escrow.

During my purchase of the properties, informed me that I did not need to wait until after the close of escrow to refinance the properties, because the equity could be taken out during escrow.

Affiant's Signature/Initial ____________

**Affidavit (continued)**

It took me a long time to get convinced.

I remember seeing buyers leaving office, and they seemed happy. It appeared that the buyers were getting the money that was promised, so I decided to do it.

I telephoned Special Agent Toussaint on March 31, 2011 and informed her that my original statements regarding monetary benefits for the purchase of the seven properties were not true because I received cashier's checks from for the purchase of the properties. I originally did not tell the Special Agents the truth because I was nervous and scared.

For one of the transactions, said "follow me to the bank." I think it was for one of the first two properties. I do not recall the name of the bank, I waited for in the parking lot, and she provided me with the cashiers checks in the parking lot of the bank.

On other occassions, I received cashiers checks in ' office . The only individuals that gave me cashiers checks as part of my purchase were . I travelled to San Diego seven times to pick up cashiers checks . I received cashiers checks each time I purchased a property . I received a total of approximately $170,000 in cashiers checks . I deposited the cashiers checks in my bank account at Bank of America. I no longer have a bank account at Bank of America.

I eventually decided that the purchase of the properties were a good investment and decided to purchase the properties.

I agreed to purchase the properties, because I felt like I would be able to keep up with the mortgage payments with renters in each property.

Affiant's Signature/Initial

**Affidavit (continued)**

I signed all of the loan applications for the properties at an escrow office in San Diego. The escrow office was not the same office where worked, it was located in Downtown San Diego. I do not remember the name of the escrow officer, but I remember that it was the same person for each property.

I also signed loan documents at my house when a few notaries came to my house to have me sign some of the documents. The notary came to my house approximately two times.

I signed all of my Residential Loan Applications at the close of escrow. I do not remember seeing any of the loan applications prior to the close of escrow.

I do not know who actually filled out or completed any of my loan applications. I never filled out any of the loan applications myself.

I used approximately $100,000 of the cashier's checks that I received from to purchase a property in Chicago through Edwards.

I purchased 6824 Rolando Knolls Drive for $599,800. The property closed escrow on April 7, 2006. I drove to San Diego to look at the property . The Residential Loan Application dated 3/31/2006 states that the property would be my primary residence. I planned on living in the property, however that did not happen. The loan application states that my income was $13,000 per month, and that I worked at WMC. I was working for WMC during the time, however my income was between 10,000 to 12,000 per month. My income varied because I was in sales. After seeing the name "Accurate Lenders" on my loan application, I think that this may have been the name of the office where worked. I remember the name "Accurate Lenders" and the name "Advanced" as companies related to , . I do not know who Donald Shore is, but I remember hearing his name in office. I have never met Donald Shore. I do not know why there is a pay-out of $69,000 to BYW Construction LLC on the HUD1 settlement statement dated 4/7/2006. I have never heard of BYW Construction LLC. I do not know anything about BYW Construction. The Special Agents showed me a contractors invoice from BYW Construction dated 3/9/2006. I have never seen this invoice. I do not recognize the signature on the invoice.

I never hired BYW to perform any construction work on any of the properties that I purchased.

Affiant's Signature/Initial ______________________

**Affidavit (continued)**

I purchased 635 San Miguel Ave., Spring Valley, CA 91977, which closed escrow on May 31, 2006. I looked at San Miguel Ave. with before I decided to purchase it. The sale price of the property was $550,000. When agents interviewed me on March 29th, I initially told them that I planned on using the San Miguel Ave., property as my primary residence; however after reviewing the escrow and loan documents, I remembered that it was Rolando Knolls property that I planned on using as my primary residence, not San Miguel. At the end, I did not use either property as my primary residence. The Residential Loan Application for 635 San Miguel Ave., Spring Valley CA states that I earn $15,300 per month. As stated previously, my actual income averaged between $10,000 and 12,000 per month. I do not know why the loan application states that the property will be my primary residence. I do not know why there is a pay-out to BYW Construction for $93,000 on the HUD1 Settlement Statement dated 6/2/2006. I do not know who or what BYW is. The Special Agents showed me an invoice dated April, 2006 from BYW Inc in the amount of $93,000. I have never seen this invoice. As I stated previously, I never hired BYW to perform any work on any of the properties that I purchased. I purchased San Miguel Ave. as an investment. I initially planned on fixing up San Miguel to rent it out, however I never rented out San Miguel. San Miguel needed a lot of work and I never got the work done to get it ready to be rented out. I made the mortgage payments on San Miguel for approximately seven months.

The two Residential Loan Applications for 3532 Meade Ave., #7, San Diego CA states that the property would be an investment property. This is accurate because I rented out the property and purchased it as an investment property. I do not know why there is a pay-out to BYW Inc. of $75,000 on the HUD1 Settlement statement dated 2/15/2007. As I stated before, I did not hire BYW to perform any work on any of the properties that I purchased.

Escrow closed on 3532 Meade Ave., #31, San Diego, CA on 1/4/2007. I do not know why there is a pay out to BYW Inc. of $75,000 on the HUD1 Settlement Statement dated 1/4/2007.

The two Residential Loan Applications for 3532 Meade Ave., # 32, San Diego, CA states that the property would be an investment property. This statement is correct because I purchased the property as an investment property to rent out. The company named MB&S on the loan application was an actual company that I had created, but it was not an active company during the time that I purchased the properties. The individual told me that I needed to come up with another job to place on the loan application. The individual asked me if I had a company name or another business name that could be used on my loan application. I told the person on the phone that I had an inactive company from years ago. I gave the individual the company name MB&S Inc. to place on my loan application. I can not remember who I

Affiant's Signature/Initial

**Affidavit (continued)**

gave the company name to for placement on the loan application, . The loan application states that my monthly income was $23,300 per month. I have never made $23,300 amount of money per month. As I previously stated, I made on average $10,000 to 12,000 per month. I do not know if the net worth on the loan application listed as $190,000 is accurate, I would have to check my records to verify it. I had a Bank of America and a Washington Mutual bank during this time, however I can not remember how much money I had in the bank accounts. accountI do not know why there is a pay-out to BYW Inc of $80,000 on the HUD1 Settlement Statement dated 4/5/2007. The Special Agents showed me a Verification of Deposit dated 12/26/2006 from Washington Mutual Bank showing a current balance of approximately $99,000. I have never had an account balance of $99,000. I had an account at Washington Mutual which included a line of credit. I initially told the agents on March 29th that the largest amount that I ever had in my account was no more than $30,000, however now I can not remember. When I said $30,000 to the agents, I may have been thinking about Bank of America. It is possible that I had $99,000 in my Washington Mutual Bank account, but I would have to check my bank statements for that time. I was shown a letter dated 3/23/2007 signed by John McKinney (McKinney) stating in part that M&M had been preparing business tax forms schedule C for me since tax year 2003 to the present. Mckinney was my return preparer at one time. McKinney prepared my business tax returns for me for my company MB&S during 2007 and 2008.

Escrow closed on 3532 Meade Ave., #40, San Diego, CA on 2/22/2007. I do not know why there is a pay out to BYW Inc of $77,500 on the HUD1 Settlement Statement dated 2/22/2007. The Residential Loan application for 3532 Meade Ave., #41 San Diego, CA list the property as secondary residence. This is not accurate because I purchased the property as an investment and rented out the property. I was not making $22,800 per month in income as stated in the loan application. I was not making $22,800 per month during this time. I do not know why there is a pay out to BYW Inc of $77,500 on the HUD1 Settlement Statement dated 2/23/2007.

All of the properties I purchased at Meade were investment properties.

I never met the seller of the Meade properties.

Special Agent Murillo showed me copies of Washington Mutual cashiers cashiers check numbers 356221762, dated 4/12/2006, in the amount of $9,000; 356221763, dated 4/12/2006 in the amount of $9,000; 356221764, dated 4/12/2006 in the amount of $9,000; 356221765, dated 4/12/2006 in the amount of $9,000; 356221766, dated 4/12/2006 in the amount of $9,000; and 356221768, dated 4/12/2006 in the amount of $5,000. I remember receiving a lump sum of cashiers checks from Dana or Jones, but I can't remember which one gave me

Affiant's Signature/Initial

**Affidavit (continued)**

the cashiers checks. The cashiers checks may have been for my purchase of Rolando Knolls because Rolando Knolls closed escrow on 4/7/2006. they were giving me the cashiers checks seperately so that when I deposited the money in my bank account, there would not be any red flags on my bank account. They told me that I should not deposit all of the cashiers checks in my bank account all at once because the banks would report it to the government. They told me not to deposit the money all at once. I deposited the cashiers checks into my Bank of America account by depositing them one per day.

Special Agent Murillo showed me Washington Mutual Cashiers Checks numbers 575949946, dated 6/5/2006 in the amount of $6,000; 575949947, dated 6/5/2006 in the amount of $6,000; and 575949948, dated 6/5/2006 in the amount of $6,000. . The cahiers checks may have been for my purchase of San Miguel because the property closed escrow on 5/31/2006. All of the cashiers checks shown to me state "Pay to the order of Kendrick Green." I also received approximately $15,000 to $20,000 each worth of cashiers checks for my purchase of each condo located at Meade Ave.

Other than the seven properties mentioned above, I did not purchase any additional properties

During my interview on March 29th, Special Agent Toussaint showed me copies of my U.S. Individual Income Tax Returns, Forms 1040 for the years 2006, 2007, and 2008. The tax returns were also shown to me today. The 2006, 2007, and 2008 U.S. Individual Income tax Returns are the tax returns that I filed and the signatures on the tax returns are my signatures. My wages on the above tax returns that states $81,896 for 2006; $7,938 for 2007 and $14,406 for 2008 was the actual income that I was making at the time. The Schedule E on my 2006 income tax return lists 635 San Miguel as my rental property, and that I received total rental payments of $6,750 for the year. The Schedule E on my 2007 income tax return lists 635 San Miguel and 3532 Meade Ave., as my rental propeties and that I received $18,000 in rental payments that year. The Schedule E on my 2008 income tax return lists my rental properties as 635 San Miguel; 3532 Meade Ave.; 819 E Drexel Sq., Chicago IL and that I made $3,335 in rental payments that year. I do not know why my tax returns states that San Miguel was a rental property because I did not rent out San Miguel. The income on the tax returns are accurate, and the income on the loan applications were not.

I sent my Form W-2's to assist in preparing my loan applications.

I stopped working at WMC sometime in 2007.

The last contact I had with Edwards was sometime in 2008 when she sent me an email stating that she was moving to Chicago or Michigan.

Affiant's Signature/Initial ______________________

**Affidavit (continued)**

As part of the subponea served on me on March 29th ,I provided one legal size file folder containing various documents relating to the properties that I purchased in San Diego

I did not find any loan applications relating to the properties that I purchased. I will check my records again, and if I find additional documents, I will mail them to address on the subpoena.

Affiant's Signature/Initial

**Affidavit (continued)**

I have read the foregoing statement consisting of 9 page(s), each of which I have signed. I fully understand this statement and it is true, accurate and complete to the best of my knowledge and belief. I made the corrections shown and placed my initials opposite each.

I made this statement freely and voluntarily without any threats or rewards, or promises of reward having been made to me in return for it.

(Signature of affiant)

Subscribed and sworn to before me this 14th day of April, 2011 at U.S. Attorney's Office, 880 Front Street San Diego, CA

(Signature)

Darline Toussaint
Special Agent

(Title)
Internal Revenue Service

(Signature of witness, if any)

Leticia Murillo - IRS Special Agent